## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

|  |  |  |
|---|---|---|
| ROSEMARY SPINNEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 2:15-cv-459-NT |
| | ) | |
| RICHARD SPENCER, | ) | |
| SECRETARY OF THE NAVY | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Rosemary Spinney brings this action against the Navy for sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2003-15. She advances both hostile work environment and failure to promote claims. Before me is the motion for summary judgment brought by Defendant Ray Mabus[1] in his official capacity as Secretary of the Navy (the "**Navy**"), pursuant to Federal Rule of Civil Procedure 56. (ECF No. 40). For the reasons stated below, the motion is **DENIED IN PART and GRANTED IN PART.**

## LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material where it could influence the outcome of the

---

[1] Ray Mabus is now the former Secretary of the Navy. Richard Spencer became Secretary of the Navy while this motion was pending. Fed. R. Civ. P. 25(d).

litigation. *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 101 (1st Cir. 2017). A dispute is genuine where a reasonable jury could resolve the point in favor of the non-moving party. *Id.* In deciding a motion for summary judgment, the court must construe the evidence "in the light most favorable to the non-moving party" and draw "all reasonable inferences" in the non-movant's favor. *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).

## FACTUAL BACKGROUND

Spinney has been the only female employee in the crane operations department at the Portsmouth Naval Shipyard since she started working there in 2002. Spinney presently is a Crane Operator WG-11. The allegations in this case center on the conduct of the following co-workers and supervisors.

- Trevor Thayer was superintendent of rigging and equipment operations and oversaw all personnel within the crane operation department, including the general foreman and work supervisors. Thayer approved Spinney's most recent promotion, which was in 2008.

- Rick Schoff was Spinney's foreman and, in 2014, was promoted to be the department general foreman.

- Joseph "Larry" Kashmer and Christopher Nadeau were Spinney's co-workers. Sometime between 2011 and 2013, Nadeau was promoted to Spinney's work leader. In 2014, Kashmer was promoted over Spinney to work leader and Nadeau was promoted again to become Spinney's work supervisor.

In addition, colleagues of Spinney's corroborate her account in sworn statements. They are Craig Richardson, the crane operations unit's union representative; James Fisher, who worked in crane operations at the shipyard for 35 years until his retirement in September 2014; and Tim Yates, who worked in the shipyard for 30 years until his retirement in 2013.

I include additional facts within the sections to which they pertain.[2]

---

[2] The parties have presented me with 478 facts which encompass over 300 pages. Disputed facts that are properly supported are taken in the light most favorable to the non-movant. Where a fact has been fairly qualified and the qualification is supported by a record citation, I use the fact as qualified. To the extent that an objection has been made to a fact that I rely on, I have overruled that objection.

Many of the Navy's "denials" and "qualifications" are accompanied by lengthy and convoluted objections which often incorporate by reference lengthy and convoluted objections raised in response to other facts. For instance, the Navy's response to JSMF ¶ 273 refers back to JSMF ¶ 272, which, in turn, refers back to JSMF ¶ 254 and ahead to JSMF ¶ 297. Def.'s Reply Statement of Material Facts [hereinafter Joint Statement of Material Facts ("JSMF")] (ECF No. 48). Many of the Navy's "denials" and "qualifications" consist only of objections or requests to strike although they are not labeled as such. Pursuant to Local Rule 56(e): "If a party contends that an individual statement of fact should not be considered by the court, the party may include as part of the response that the statement of fact 'should be stricken' with a brief statement of the reason(s) and the authority or record citation in support. Without prejudice to the determination of the request to strike the party shall admit, deny or qualify the statement as provided in this rule." Local Rule 56(c) and (d) require that each denial or qualification be supported by a record citation. Facts not properly controverted are deemed admitted. Local Rule 56(e).

For a number of facts, the Plaintiff cites only to her declaration (ECF No. 42-7). The Navy urges the court to disregard the declaration under the "sham affidavit rule." "[W]here a party has given 'clear answers to unambiguous questions' in discovery, that party cannot 'create a conflict and resist summary judgment with an affidavit that is clearly contradictory,' unless there is a 'satisfactory explanation of why the testimony [has] changed.'" *Escribano-Reyes v. Prof'l Hepa Certificate Corp.*, 817 F.3d 380, 386 (1st Cir. 2016) (alterations in original) (quoting *Hernandez-Loring v. Universidad Metropolitana*, 233 F.3d 49, 54 (1st Cir. 2000)). The Navy argues that filing the declaration 45 days after the motion for summary judgment makes it inherently suspect and that the declaration contains assertions that contradict discovery materials. Def.'s Reply 2-4 (ECF No. 49). To the extent that I have relied on a fact supported only by the Plaintiff's declaration, it is because I have found that the Defendant has failed to show that the declaration is "clearly contradictory" to answers given in discovery. *See Manchester v. Cumberland Cty. Sherriff's Dep't*, No. 2:15-CV-473-DBH, 2017 WL 1954761, at *5 (D. Me. May 10, 2017) (finding no sham affidavit where the plaintiff was never asked the question, and no testimony in her deposition was clearly contradictory to the challenged statement in her affidavit.).

## DISCUSSION

The Navy moves for summary judgment on both counts of sex discrimination. The following discussion addresses Count One, a hostile work environment claim, and then Count Two, a failure to promote claim.

## I.     Hostile Work Environment

Title VII prohibits an employer from discriminating against any individual with respect to "compensation, terms, conditions, or privileges of employment" because of sex. 42 U.S.C. § 2000e-2(a). A hostile work environment is a form of sex discrimination that consists of "offensive, gender-based conduct that is 'severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive' and is subjectively perceived by the victim to be abusive." *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 463 (1st Cir. 1996) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). To succeed in a hostile work environment claim, the plaintiff must show:

> (1) that she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

*Xiaoyan Tang v. Citizens Bank, N.A.*, 821 F.3d 206, 215-16 (1st Cir. 2016) (quoting *O'Rourke v. City of Providence*, 235 F.3d 713, 728 (1st Cir. 2001)). "Evidence of sexual remarks, innuendoes, ridicule, and intimidation may be sufficient to support a jury verdict for a hostile work environment." *O'Rourke*, 235 F.3d at 729. But Title VII is

not a "general civility code," and "offhand comments, and isolated incidents" are insufficient to establish a claim. *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 787-88 (1998)).

## A.    Exhaustion

The Navy first argues that Spinney did not adequately raise her hostile work environment claim in the formal EEO complaint that she filed in November 2014. The formal administrative complaint is "both a prerequisite for entry into federal court and a scope-setting device for the civil action that follows" under Title VII and relevant regulations. *Brown v. Mabus,* 2:14-cv-426-NT, 2016 WL 6068116, at *2 (D. Me. Oct. 14, 2016). If Spinney failed to exhaust this process, her hostile work environment claim would be barred from this civil action.

The purpose of the exhaustion requirement is to provide the employer with prompt notice of the claim and encourage early conciliation. *Powers v. Grinnell Corp.*, 915 F.2d 34, 37 (1st Cir. 1990) (applying the ADEA). Accordingly, the scope of the civil complaint is "limited to the charge filed with the [EEO] and the investigation which can reasonably be expected to grow out of that charge." *Fantini v. Salem State Coll.*, 557 F.3d 22, 27 (1st Cir. 2009) (quoting *Powers*, 915 F.2d at 37). "This does not mean that the scope of the suit is inevitably limited to the allegations in the administrative complaint, but it is nonetheless constrained by those allegations in the sense that the judicial complaint must bear some close relation to the allegations presented to the agency." *Jorge v. Rumsfeld*, 404 F.3d 556, 565 (1st Cir. 2005) (finding Title VII claim not sufficiently alleged in an EEO filing alleging an ADEA violation).

District courts may "look beyond the four corners of the underlying administrative charge to consider collateral and alternative bases or acts that would have been uncovered in a reasonable investigation." *Thornton v. United Parcel Serv., Inc.*, 587 F.3d 27, 32 (1st Cir. 2009). In *Caldwell v. Federal Express Corp.*, a court in this District noted that factors informing the scope of the civil complaint include "whether the agency did in fact investigate the alternative grounds at issue," "whether the factual statements in the plaintiff's complaint should have alerted the agency of an alternative claim," and whether it was "clear that the charging party intended the agency to investigate the allegations." 908 F. Supp. 29, 35-36 (D. Me. 1995). In *Caldwell*, the court found a claim for age discrimination was within the scope of an administrative complaint that asserted only a sex discrimination claim because the two claims were "premised on the same predicate facts." *Id.* at 35.

In this case, Spinney's formal EEO complaint was filed after she had conversations with two different EEO counselors and had attempted to mediate her EEO claims. Spinney contacted the Navy EEO office June 11, 2014, and had a "few" discussions with EEO counselor Ava Drost. Def.'s Reply Statement of Material Facts [hereinafter Joint Statement of Material Facts ("**JSMF**")] ¶ 221. Spinney and Drost discussed Spinney's non-selection for the crane operator WG-12 position in April of 2014 and whether Spinney had active priority that should have applied to the selection process. Spinney also raised the "discriminatory treatment that she had been enduring," such as the boys club mentality, how people spoke of her in vulgar terms, and her fear of reprisal from Schoff and Nadeau if she were to file an EEO

claim. JSMF ¶ 446. Drost reassured Spinney that her impression from Thayer was that the accident prevention team position would open up again soon and that Thayer, in speaking with Drost, "built [her] up on this pedestal." JSMF ¶ 447. This made Spinney think she was "very close to getting a promotion," and she decided not to file a formal complaint. JSMF ¶ 447.

On August 15, 2014, after Spinney was not selected for the accident prevention position, Spinney again contacted the Navy EEO office. Spinney met with EEO counselor Linda Campbell on August 21, 2014. Campbell's report of the interview stated simply that Spinney's complaint was the non-selection for the quality assurance specialist position. Spinney and Campbell also discussed the hostile environment, the boys' club mentality, and other background information. Spinney elected to try mediation on her claims before filing a formal complaint.

On November 4, 2014, Spinney attended a mediation for her complaint, accompanied by her attorney. Also in attendance were EEO counselor Campbell, Navy management representative Deb Carpenter, Navy human resources representative Paul Weaver, and mediator Mr. Green. Spinney spoke at length about the pattern of her treatment, filling the majority of the mediation with a discussion of how the boys' club mentality, vulgar language, and animus directed at her led to her non-selection for available positions.

Spinney filed her formal EEO complaint on November 14, 2014. The document read:

> EXPLAIN SPECIFICALLY HOW YOU WERE DISCRIMINATED AGAINST (That is, treated differently from other employees or

applicants, because of your race, color, religion, sex, national origin, age, mental or physical disability, reprisal or genetic information). (If your complaint involves more than one allegation, list and number each allegation separately and furnish specific, factual information in support of each).

Allegation Number 1 (Include basis(es) (See Question Number 7):

*For years, I have been consistently discriminated against because of my gender and denied certain types of training that sometimes are claimed to be needed for promotion, and denied promotions and/or new employment positions.*

Formal Complaint 4 (ECF No. 36-3) (italics added to distinguish handwriting). Spinney's response, written by hand, filled the provided text box. In the field asking for the date of the most recent alleged discrimination, Spinney stated "August 21st, 2014" and "ongoing." Formal Complaint 3. Spinney at no time sought to amend her complaint. She believed she had indicated to the Navy EEO on numerous occasions, including in the formal complaint, that the hostile work environment was part of her claims.

During the investigation, the EEO investigator's questions to Spinney were narrow in scope, focusing on the quality assurance position and certain training. JSMF ¶ 473. In response, however, Spinney also "provided information regarding management's denial of training in an effort to preclude her from being promoted, management's favoring of her male co-workers over her, feeling mistreated by male co-workers, and the 'good old boy network.' " JMSF ¶ 473. The EEO's final decision framed the issue narrowly as the Navy's alleged failure to promote or train Spinney in August 2014 and November to December 2014, and it found no discrimination. EEO Final Decision (ECF No. 36-5).

The question of exhaustion turns on whether a hostile work environment claim "can reasonably be expected to grow" out of the formal complaint Spinney filed in November 2014. *See Fantini*, 557 F.3d at 27. Several factors indicate that Spinney satisfied the administrative exhaustion requirement.

First, I look to the language of the administrative complaint. Spinney's statement in her EEO complaint that "[f]or years, I have been consistently discriminated against because of my gender" suggests on its face a hostile work environment claim. Although the hostile work environment language is general, Spinney's complaint was equally terse on all claims. The Navy does not explain why the administrative complaint provided sufficient facts to give rise to the failure to promote and train claims but not to the hostile work environment claim. Additionally, after the statement, "for years, I have been consistently discriminated because of my gender," Spinney goes on to say "*and* denied certain types of training that sometimes are claimed to be needed for promotion, *and* denied promotions and/or new employment positions." Using the conjunction "and" lends support to a claim that she was not simply pursuing the failure to promote or train claims. Finally, when asked to indicate the date on which the most recent discrimination occurred, Spinney responded both "Aug. 21st, 2014" and "ongoing." This also suggests that Spinney did not intend to limit her claims to the failure to promote or train claims. While it is true that the question directs the claimant to "list and number each allegation separately," the logical claim that could have all the elements that Spinney listed would be a hostile work environment claim. *See Caldwell*, 908 F. Supp. at 35-36.

Second, I "look beyond the four corners of the underlying administrative charge" and consider "alternative bases or acts that would have been uncovered in a reasonable investigation." *Thornton*, 587 F.3d at 32. Here, I find relevant Spinney's meetings with EEO officials in June, August, and November of 2014, where she disclosed specific incidents in which she experienced crude language and gender-based resentment. During the investigation following her formal complaint, Spinney again disclosed these incidents. Spinney explained she believed that the hostile environment claim was part of the pattern of discrimination manifested by the failure to promote or train claims. Pl.'s Opp'n 4-5 (ECF No. 44). Based on the fact that Spinney was repeatedly bringing up hostile treatment by her coworkers during her conversations with EEO counselors, during mediation, and during her interview with the investigator, the Navy is hard-pressed to claim it had no notice of the claim and was denied an opportunity for early resolution of the claim. *See Powers*, 915 F.2d at 37.

Third, Spinney's hostile work environment claim is reasonably related to her failure to train and promote claims. Spinney describes years of a poisonous work environment. On the facts in the light most favorable to Spinney, her supervisor Schoff routinely referred to her as a "bitch" and told others that she would get nowhere as long as he was in charge. Spinney watched as men, who were hired after her, received training that she was denied and were promoted over her. As part of the hostile work environment claim, Spinney must show that the harassment was sufficiently severe or pervasive to alter the conditions of her employment. *Citizens*

*Bank*, 821 F.3d at 215-16. The denials of training and promotions serve to establish the altered work conditions. Spinney's hostile work environment claim directly "relate[s] to the same conduct, and involve[s] the same individuals" as her failure to train and promote claims. *Caldwell*, 908 F. Supp. at 35.

The Navy correctly notes that Spinney was represented by counsel by the time she filed her complaint. *Lattimore,* 99 F.3d at 464 (courts more liberally construe the charges of pro se claimants). Despite the fact that she was represented by counsel, Spinney did not include specific facts or the term "hostile work environment" in her complaint and did not seek to amend the complaint after the EEO narrowly framed the issue as a failure to promote and train. Clearly those facts support the Navy's exhaustion argument.

Although this is a close call, I conclude that Spinney intended the agency to investigate her hostile environment claim. I also find that she adequately, though minimally, asserted a hostile work environment claim in her formal written complaint. Spinney's hostile work environment claim was reasonably related to her failure to promote and failure to train claims. Finally, given the context of the discussions that she was having with EEO during this time, I find that the Navy cannot be surprised about this claim and cannot claim that it had no opportunity for early conciliation of the issue. Because I find that a hostile work environment claim "can reasonably be expected to grow" out of the formal complaint Spinney filed in November 2014, I reject the Navy's exhaustion argument. *See Fantini*, 557 F.3d at 27.

## B. Timeliness and the Continuing Violation Doctrine

The Navy's second argument is that Spinney's hostile work environment claim is time-barred. Regulations promulgated under Title VII require that "an aggrieved [federal employee] must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a);[3] *see also Velazquez-Rivera v. Danzig*, 234 F.3d 790, 794 (1st Cir. 2000). The Navy asserts that this time limit would exclude incidents of discrimination that precede July 1, 2014,[4] unless an exception applies. Def.'s Mot. for Summ J. 20. The Navy contends that because the Plaintiff does not identify any hostile treatment occurring after July 1, 2014, her hostile environment claim is untimely.

Spinney responds that the continuing violation doctrine preserves her claim. The continuing violation doctrine is an equitable exception that permits an employee to seek damages for "otherwise time-barred allegations if they are deemed part of an ongoing series of discriminatory acts and there is 'some violation within the statute of limitations period that anchors the earlier claims.' " *Lockridge v. Univ. of Me. Sys.*, 597 F.3d 464, 474 (1st Cir. 2010) (quoting *O'Rourke*, 235 F.3d at 730). In Title VII cases, "[i]t does not matter . . . that some of the component acts of the hostile work environment fall outside the statutory time period. Provided that an act contributing

---

[3]     Federal employees are not subject to the same complaint process as other employees, who generally have 180 days from the discriminatory conduct to file a charge. 42 U.S.C. § 2000e-5(e)(1).

[4]     Spinney challenges this date in the failure to promote section of her brief, but does not raise the issue when addressing her hostile work environment claim.

to the claim occurs within the filing period, the entire time period of the hostile environment may be considered . . ." *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117 (2002).

"The classic example of a continuing violation is a hostile work environment, which 'is composed of a series of separate acts that collectively constitute one unlawful employment practice.' " *Tobin v. Liberty Mut. Ins. Co.*, 553 F.3d 121, 130 (1st Cir. 2009) (quoting *Morgan*, 536 U.S. at 117); *see also Johnson v. Univ. of P.R.*, 714 F.3d 48, 53 (1st Cir. 2013) ("Discrete acts and hostile work environment claims are 'different in kind' because hostile work environment claims by their nature involve repeated conduct and a single act of harassment may not be actionable on its own."). Because of the "natural affinity" between the continuing violation and hostile environment doctrines, "a court should not hastily dismiss on timeliness grounds a harassment claim where a continuing violation is alleged." *O'Rourke*, 235 F.3d at 727. "Unless there are no material facts in dispute permitting resolution as a matter of law as to whether a continuing violation occurred, it is a jury issue." *Id.*

The Navy contends that the Plaintiff fails to meet any of the criteria for the continuing violation doctrine. Def.'s Mot. for Summ. J. 21-22. The First Circuit has summarized three criteria to help determine the sufficiency of a serial continuing violation claim, such as the one Spinney presents:

1) is the *subject matter* of the discriminatory acts sufficiently similar that there is a substantial relationship between the otherwise untimely acts?

2) are the acts isolated and discrete or do they occur with *frequency* or repetitively or continuously?

13

3) are the acts of *sufficient permanence* that they should trigger an awareness of the need to assert one's rights?

*O'Rourke*, 235 F.3d at 731 (citations omitted). As to the first of the criteria, the Navy argues that the record does not contain a timely anchoring, discriminatory act that is either similar to or substantially related to the time-barred conduct. The Navy asserts that the August 2014 non-selection for the quality assurance specialist GS-11 position cannot "do double duty" for both the hostile environment and failure to promote claims.[5]

The Navy also maintains that Schoff's August 2014 request that Spinney work the nightshift was not sufficient as an anchor because it was not "offensive, vulgar, []or gender-related." Def.'s Mot. for Summ. J. 21. I disagree. The record in the light most favorable to Spinney establishes that on August 12, 2014, Schoff called Spinney into the office, asked her to switch to nights, and laughed at her frustration at not receiving the quality assurance specialist position. The fact that the request was not overtly based on gender is not fatal. *See O'Rourke*, 235 F.3d at 730 ("incidents of nonsexual conduct—such as work sabotage, exclusion, denial of support, and humiliation—can in context contribute to a hostile work environment"). A reasonable

---

[5]     In support of its "no double duty" argument, the Navy cites to a discussion in *Morgan* of time limitations on *discrete acts* of discrimination. *Morgan* expressly distinguishes the application of the continuing violation doctrine to discrete acts from hostile work environment claims. *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 113 (2002). The Navy cites no other controlling authority for this principle. I am skeptical of the Navy's double duty argument, but I need not resolve the question because I find that other conduct apart from the non-selection anchors the hostile work environment claim.

juror could conclude that this conduct is an example of workplace animus, similar to earlier acts. To highlight a sample of Schoff's conduct before July of 2014:

- Schoff and other male coworkers rudely ridiculed and verbally slurred Spinney on essentially a daily basis when she would turn her back or walk away from her coworkers.

- Schoff enjoyed causing a hostile environment for Spinney.

- Schoff was aware of derogatory remarks about Spinney made by other co-workers because he was present for many of them, including the time Nadeau referred to Spinney as a "gash."

- Schoff called Spinney a "bitch" on more than one occasion and stated that she was "the biggest bitch at the Shipyard" in 2014.

- Schoff and other supervisors set the tone for how Spinney was treated by other co-workers.

- Schoff said words to the effect that there was "no fucking way on my watch" that Spinney would be promoted and that "Rose will never go nowhere as long as I'm running the fucking show."

- Schoff "trashed [her] to his own supervisors," and said she "causes a lot of trouble."

JSMF ¶¶ 272-77, 281-83, 382-83. These facts support a conclusion that the August 2014 incident in which Schoff laughed at Spinney's failure to get a promotion and requested that she take the night shift is sufficiently similar to establish a substantial relationship between the otherwise untimely conduct and the timely conduct.

Second, the Navy contends that the timely conduct here was isolated and discrete, occurring over the course of two days in August of 2014. Again, the record, in the light most favorable to the Plaintiff, contains sufficient evidence to establish that Spinney suffered ongoing mistreatment by her male colleagues, including her supervisors, in the workplace.

Third, the Navy asks me not to apply the continuing violation doctrine because Spinney was aware of her right to file a hostile work environment complaint for years and simply neglected to do so. *O'Rourke* teaches differently.[6] *See* 235 F.3d at 732. O'Rourke was the sole female firefighter for the City of Providence who endured years of harassment from her fellow firefighters and supervisors. The First Circuit addressed "whether the sheer volume and repetition of the harassment should, as a matter of law, have led O'Rourke to file a discrimination claim earlier." *Id*. In concluding that O'Rourke's claim was properly filed, the court explained:

> the relevant law makes clear that often a sexual harassment claim will not accrue until after a period of recurring acts of harassment. A plaintiff usually will not have a viable claim of hostile work environment from single acts that are isolated or sporadic or not themselves severe enough to alter the work environment and create an abusive work environment—both from an objective and subjective viewpoint.

*Id*. Determining the moment when "enough is enough" can be tricky. Indeed, the Navy's argument that the conduct at issue was not sufficiently pervasive makes it difficult for it to argue that the Plaintiff should have brought her claim sooner. Spinney may have been aware that she was experiencing discriminatory behavior, but she also had to decide when a discrimination claim would be objectively viable.

---

[6] Arguably, this notice limitation no longer applies. *Morgan*, decided the year after *O'Rourke*, may have eliminated any plaintiff's duty to sue when she became aware that actionable discrimination had occurred. *See* Lex Larson, *Larson on Employment Discrimination* § 72.08[4] (2017); *Morgan*, 536 U.S. at 117 n.11 ("rejecting an employer's argument that "recovery for conduct taking place outside the time period for filing a timely charge should be available only in hostile environment cases where the plaintiff reasonably did not know such conduct was discriminatory"); *id*. at 120.

Because a reasonable juror could find that the August 12, 2014 events were a continuation of a hostile work environment, I find that the hostile work environment claim is not time-barred.

## C.    On the Merits

The Navy contends that "no reasonable jury could conclude that Plaintiff worked in a hostile environment, even viewing the evidence in the light most favorable to her." Def.'s Mot. for Summ. J. 22. The basis for Spinney's hostile work environment claim, according to the Navy, is her "umbrage over the ordinary tribulations of the workplace, such as the sporadic use of abusive language, which she typically learned of secondhand." Def.'s Mot. for Summ. J. 9. In particular, the Navy claims that the record evidence is insufficient as a matter of law to establish that the harassment was sufficiently severe or pervasive and objectively and subjectively offensive. Def.'s Mot. for Summ. J. 22-25.

On this record, however, a reasonable jury could find a hostile environment, manifested by Spinney's superiors and co-workers' aggressive name calling, stated intent to limit her professional growth, jokes at her expense, minimization of her concerns, and enjoyment in her setbacks. Looking only at Schoff's conduct identified above, Spinney has demonstrated that her hostile work environment claim is trial worthy. Record facts seen in the light most favorable to Spinney also include co-workers calling Spinney "bitch," "cunt," and "gash" without consequence. Spinney's supervisors would walk away when she tried to talk to them, give her dirty looks, roll their eyes, or make fun of her. The fact that derogatory comments about Spinney were often made out of her earshot and merely relayed to her by sympathetic co-workers

does not cushion their impact as the Navy suggests. Spinney assumed that her coworkers were talking negatively about her when silence fell or people turned away as she walked into a room. Her sympathetic coworkers made it clear that she was right in that assessment.

In addition to being treated disrespectfully on an almost daily basis, there regularly were awkward conversations about sex or private matters. For example, on one occasion co-workers referenced blow jobs and referred to Spinney. On another occasion a co-worker asked whether Spinney was out-of-sorts because she forgot her vibrator. On yet another occasion, when Spinney needed to use the restroom while she was on a crane, a co-worker told her to use a bucket. Contrary to the Navy's contention, on the record before me, a reasonable juror could conclude that Spinney was subjected to a hostile work environment. Summary judgment on the hostile work environment claim is denied.

## II.      Failure to Promote

Count Two addresses the Navy's failure to promote Spinney as a form of sex discrimination. At summary judgment, Spinney identifies three instances in which she was improperly denied a promotion: the WG-12 crane operator positions given to Turcotte and Guillemette in spring 2014, the WL-12 work leader position given to Kashmer in spring 2014, and the GS-11 quality assurance specialist position given to Brouillard in summer 2014. Pl.'s Opp'n 1-2.

### A.      Crane Operator WG-12 and Work Leader WL-12 Positions

The Navy argues that Spinney's failure to promote claims for the WG-12 and WL-12 positions in spring 2014 are time barred. As stated above, "an aggrieved

person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory, or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a).

The parties dispute the point at which Spinney "initiated contact" with the EEO with regard to these two non-selections. To satisfy the "initiate contact" requirement, an employee must "contact an agency official logically connected to the EEO process and exhibit an intent to begin the EEO process." *Murphree v. Comm'r*, 644 F. App'x 962, 966 (11th Cir. 2016) (citing *Duke v. Slater*, EEOC Dec. 01A02129, 2000 WL 732027, at *1 (E.E.O.C. May 22, 2000)); *see also Lord v. Holder*, 568 Fed. App'x 435, 437-38 (6th Cir. 2015); *Krause v. Presidio Tr. Facility Div.*, 572 F.3d 1039, 1045-46 (9th Cir. 2009); *Nygren v. Ashcroft*, 109 Fed. App'x 816, 819 (8th Cir. 2004).

The Navy contends that August 15, when Spinney met with EEO Counselor Linda Campbell, sets the 45-day window. This "initial contact" date would bar Spinney's claims for the WG-12 and WL-12 positions. In response, Spinney asserts that her conversation with EEO Counselor Ava Drost on June 11 should anchor the 45-day window.[7] Spinney insists that speaking "at length" with an EEO counselor clears the regulatory hurdle, even if she did not seek counseling again until two months later. Pl.'s Opp'n 23.

---

[7] Under even the earliest date suggested by Spinney as the start of the limitations period (May 8, 2014 when she received a denial letter), her initial EEO contact would be timely if it occurred on June 11, 2014. Pl.'s Opp'n 24 (ECF No. 44) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 499 (6th Cir. 2001) for the rule that the limitations period starts to run when the discriminatory act was communicated to the plaintiff).

At the June 11 meeting, Spinney alleged discriminatory conduct, including non-selection for promotions. Spinney also described a fear of reprisal should she file an EEO claim, indicating her awareness of the EEO process. Of central significance to this issue, Spinney decided in the course of the conversation with Drost that she would not file a formal complaint. This indicates her intent *not* to begin the EEO process.[8] *See Bailey v. USPS*, 208 F.3d 652, 655 (8th Cir. 2000) (plaintiff "explicitly disavowed any intent to request EEO counseling" during the preliminary conversation); *see also Nygren*, 109 Fed. App'x at 819 (plaintiff met with an EEO counselor during the time period, but did not make a written request for counseling or seek to file a complaint, and "her statements to [the EEO counselor] and other [employer] officials indicate that she was not interested in pursuing the matter unless [the] conduct resumed"); *Welsh v. Hagler*, 83 F. Supp. 3d 212, 221 (D.D.C. 2015) (plaintiff's email "merely describes the events that transpired. He does not reference the EEO process or ask the recipients to take any action at all. He also did not follow up . . . suggesting that [he] did not intend on pursuing the matter further."). *Cf. Koch v. Walter*, 935 F. Supp. 2d 143, 151 (D.D.C. 2013) (plaintiff made repeated attempts to contact the EEO office for counseling, signaling her intent to begin the process). Because Spinney fails to establish her intent to begin the EEO process at the June meeting, her complaints for non-selection to the WG-12 and WL-12 positions were untimely.

---

[8] Spinney suggests that Drost influenced her not to file a claim at the June 11 meeting, but she does not develop a legal argument that this influence should toll the limitations period. *See* Pl.'s Opp'n 21 (citing JSMF ¶¶ 447-48).

Administrative deadlines are not jurisdictional requirements, however, and Spinney's lack of timeliness may be subject to equitable tolling. Here, Spinney argues that tolling would be warranted because she did not know about the 45-day limit. Equitable tolling is a narrow equitable doctrine, particularly in suits against the government. *Farris v. Shinseki*, 660 F.3d 557, 563 (1st Cir. 2011). And, there can be no "excusable ignorance" where the plaintiff had actual or constructive notice of her statutory rights. *Bartlett v. Dep't of the Treasury (I.R.S.)*, 749 F.3d 1, 10 (1st Cir. 2014). Actual knowledge attaches where an employee is told of his rights, "even if he becomes only generally aware of the fact that there is a statute outlawing [the prohibited] discrimination and providing relief therefore." *Id.* Constructive notice applies where the plaintiff retains an attorney or the employer conspicuously posts the EEO notices. *Id.*

Here, Spinney maintains that she was unaware of the 45-day window, but she attended trainings as an employee that informed her of her rights to non-discrimination and relief. She acknowledged that as an employee of the Shipyard, she had "the ability to initiate an EEO action." Spinney Decl. ¶ 59 (ECF No. 42-7). In addition, Spinney does not contest that there was an EEO notice in areas she frequented at work that states employees must contact an EEO Counselor within 45 days of the discriminatory action. On this basis, equitable tolling is unavailable. The failure to promote claim with respect to the WG-12 and WL-12 positions is untimely.[9]

---

[9]     Finding the claims untimely, I do not reach the Navy's arguments specific to exhaustion. Time-barred discriminatory conduct may nonetheless provide relevant background evidence to a timely claim. *Morgan*, 536 U.S. at 113.

Summary judgment is therefore warranted on the failure to promote claims with regard to the WG-12 and WL-12 positions.

## B.   Quality Assurance Specialist GS-11 Position

The Navy contests Spinney's claim with regard to the quality assurance specialist position on the merits. A failure to promote claim is governed by the *McDonnell Douglass-Corp. v. Green* burden shifting framework. *Lockridge*, 597 F.3d at 470 (citing 411 U.S. 792 (1973)). Under this doctrine, the plaintiff first must establish a prima facie case of discrimination. This requires a de minimis showing that she was not selected to the position to which she applied, that she was otherwise qualified for the position, and that the position was filled by a male employee with qualifications similar to her own. *Johnson*, 714 F.3d at 53 n.6. Second, the burden of production shifts to the defendant to provide a "legitimate, non-discriminatory reason" for the adverse employment action. *Lockridge*, 597 F.3d at 470. If the defendant satisfies this second step, the burden shifts back to the plaintiff to show that the defendant's reason is pretext and that the actual reason is discrimination. *Johnson*, 714 F.3d at 54. The First Circuit has cautioned that "where a plaintiff . . . makes out a prima facie case and the issue becomes whether the employer's stated nondiscriminatory reason is a pretext for discrimination, courts must be 'particularly cautious about granting the employer's motion for summary judgment.' " *Kelley v. Corr. Med. Servs., Inc.*, 707 F.3d 108, 116 (1st Cir. 2013) (quoting *Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151, 167 (1st Cir. 1998)).

In early April 2014, Spinney learned about an upcoming opening for a quality assurance specialist position, GS-11, also referred to as the accident prevention team

leader. The position required managing a team to provide department-wide improvement of shipyard accident prevention, knowledge of rigging and equipment operating processes, data collection and analysis skills, and communication skills. Thayer was the "selecting official," and he sought an applicant who was motivated to advance the accident prevention program and who had experience in lifting and handling.

Spinney indicated her interest in the position to Thayer who responded that she "would have a lot of strengths in that job." Thayer claimed that Schoff already had told him that Spinney would be good in the position. Spinney, however, had heard that Schoff was going to campaign for someone else for the position, and she asked Schoff whether what she heard was true. Schoff did not say anything in reply.

The quality assurance specialist position posted in May or June 2014. On June 23, the shipyard human resources office issued a list of eight applicants who were deemed "eligible" for the quality assurance specialist position. The list included Spinney and seven male applicants.

Thayer had the choice under Navy hiring procedures either to hold formal interviews with an advisory recommendation panel that would include a neutral EEO official or to simply make a selection from the list of qualified candidates. Thayer followed a hybrid, informal interview process that he had used previously for lower-level positions. Thayer also chose Ted Blair, a rigger general foreman temporarily acting as his administrative assistant, to join him in the interviews, a practice which he had not used previously. Thayer and Blair independently scored the interviewee

responses on a 15-point scale. Thayer gave the top-scoring interviewee 12 points and Blair gave him a 13, but Thayer dismissed his application because he did not present a "professional demeanor." Thayer gave Scott Brouillard 11.5 points and Blair gave him 12. Spinney was ranked third with 10 points from Thayer and 11 points from Blair. Thayer said Brouillard's interview answers demonstrated better focus and motivation, quick thinking, and understanding of how to deal with work resources.

Before making a decision, Thayer reviewed Brouillard and Spinney's resumes. Brouillard was a heavy mobile equipment repair inspector in the crane inspection, test, quality assurance and training division. Thayer stated that he liked Brouillard's experience with inspecting and testing shipyard cranes, and in particular valued his experience with load testing as a key facet of crane accident prevention. One of the most significant recent crane accidents at the shipyard had occurred during load testing in Brouillard's division. Thayer chose Brouillard and considered Spinney as an alternate if Brouillard declined. Navy human resources seemed to be unaware that Thayer had used interviews, which lead them to review the promotion selection solely with regard to whether Brouillard was qualified.

On August 11, 2014, Spinney met with Thayer, who told her he had selected Scott Brouillard, but that she was the alternate. This setback led Spinney to file an EEO claim.

The Navy assumes that Spinney established the prima facie case, satisfying the first step in the *McDonnell Douglass-Corp.* framework. Def.'s Mot. for Summ. J. 25. At step two, however, the Navy argues that Thayer chose Brouillard over Spinney

for legitimate reasons. Thayer believed that Brouillard's background in crane load testing and quality assurance would translate well to accident prevention in this position and that Brouillard demonstrated better understanding of "how to deal independently with a shortage in work resources," focus and motivation, and quick thinking.

Spinney seeks to undermine Thayer's legitimate reasons. She argues first that she had more experience than Brouillard because he had never worked in rigger or crane operations. This specific experience was not a job requirement, however, and Thayer found Brouillard's load testing experience significant.

Second, Spinney questions Thayer's selection methods, calling the interview process "meaningless window dressing" used to arrive at the desired result. Pl.'s Opp'n 29 n.11. Spinney notes that the process Thayer developed differed significantly from the formal process because he did not convene a panel for the interview, did not include a neutral EEO representative on the selection panel, and did not separate the roles of interview panel and the selecting official. Pl.'s Opp'n 28.

The choice of this hybrid selection procedure, which included a subjective scoring system completed by Thayer and his hand-picked assistant, was within Thayer's discretion. But his choice to use it instead of a formal panel with EEO involvement, viewed in the context of the other facts of this case and in the light most favorable to the Plaintiff, would allow a reasonable juror to find pretext. Thayer was the superintendent of the department during the entire course of the conduct at issue in this case. On the record before me, a reasonable juror could conclude that the

treatment of Spinney by those under Thayer's chain of command was widespread, blatant, vicious, and well-known among the employees. Under Thayer's leadership, three of the men who were promoted over Spinney—Schoff, Nadeau, and Kashmer—had disparaged her in sexually explicit terms. Schoff stated at upper level management meetings words to the effect that there was "no fucking way on my watch" that Rose would be promoted.[10] JSMF ¶¶ 382; Fisher Decl. ¶ 12. When Spinney raised her concerns about the way she was treated with Thayer directly, he told her she was "just emotional." JSMF ¶ 45.

On the record before me, a reasonable juror could draw an inference that Thayer's selection of Brouillard for the quality assurance specialist position over Spinney was improperly motivated by sexual bias. Summary judgment on the failure to promote Spinney to the quality assurance specialist position is denied.

## CONCLUSION

For the reasons stated above, the Court **DENIES IN PART** and **GRANTS IN PART** the Navy's motion for summary judgment.

---

[10] Spinney asserts an alternate "cat's paw" theory, arguing that Schoff influenced Thayer in the selection of Brouillard. *Ameen v. Amphenol Printed Circuits, Inc.*, 777 F.3d 63, 68 (1st Cir. 2015) (an employer may be liable for the animus of a supervisor who was not charged with making the ultimate employment decision). Thayer generally "relie[d]" on Schoff, as the general foreman, in promotion decisions, although he claims not to have relied on Schoff for this selection. JSMF ¶¶ 368-70. With the WL-12 position in spring 2014, for example, Spinney had significantly more experience than the other applicants, Turcotte and Guillemette. But, when Schoff recommended those two men and did not recommend Spinney, Thayer hired the two men and chose to leave the third available slot open. Because I find that this claim survives summary judgment, I do not address this argument.

SO ORDERED.

/s/ Nancy Torresen
United States Chief District Judge

Dated this 27th day of September, 2017.